**In re Clifford SCHMIDT and Joyce Schmidt, Debtors.**

**Bankruptcy No. 83-05259.**

United States Bankruptcy Court,
D. North Dakota.

Jan. 11, 1984.

LaRoy Baird, Bismarck, N.D., for debtors.

William J. Daner, Bismarck, N.D., Trustee.

James Geyer, Dickinson, N.D., for American.

William Westphal, Minneapolis, Minn., U.S. Trustee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The above-named Debtors filed for relief under Chapter 7 of the Bankruptcy Code on May 3, 1983. The Debtors filed their schedules with the Court on June 15, 1983, and claimed as exempt property proceeds of a Payment-In-Kind Contract. Subsequent amendments to the Debtors' claim of exemptions have not changed the Debtors' claim to the proceeds of the Payment-In-Kind Contract. An objection to the Debtors' claim of exemptions was filed with the Court on August 11, 1983, by the American Agricultural Credit Corporation (hereinafter AMERICAN). The objection was made to a number of the exemption claims, including the claim of the Payment-In-Kind Contract.

The Debtors filed a Motion for Relief and Determination with this Court on August 18, 1983. That Motion requested that the Court determine that the Debtors claims of exemptions were indeed proper. The Debtors specifically alleged that the objection of American to the Debtors' claim of exemption was not timely made and that American's interest in the Contract was not validly perfected. A reply to the Debtors' motion was filed by American on August 31, 1983. In its reply, American requested a hearing on the matter of the Debtors exemption claims. Hearing was held on October 17, 1983, at Bismarck, North Dakota.

The procedure for objection to a debtor's claim of exemptions is set out in Bankruptcy Local Rule 6. That rule provides that an objection to a claim of exemption shall be made in writing and filed with the court no later than fifteen days after the first date scheduled for the First Meeting of Creditors. If no timely objection is filed, property claimed as exempt is deemed exempt. In the present instance, the First Meeting of Creditors was scheduled for July 22, 1983. Under Bankruptcy Local Rule 6, the deadline for filing an objection to the Debtors' claim of exemptions was August 8, 1983. The objection of American was filed August 11, 1983.

■ Bankruptcy Rule 4003 provides that an objection to a claim of exemptions must be filed within thirty days after the conclusion of the First Meeting of Creditors. Bankruptcy Rule 4003 took effect on August 1, 1983, and was made applicable to proceedings then pending, except to the extent that in the opinion of the court their application in a pending proceeding would not be feasible or would work injustice. In the present instance, the procedure which should be followed is that of Bankruptcy Rule 4003. Allowing American's objection to stand under Bankruptcy Rule 4003 permits this Court to rule on the merits of the parties' claims.

### FINDINGS OF FACT

The Debtors executed and delivered a security agreement to American on April 29, 1981. That agreement gave American a security interest in farm machinery, livestock, and "[a]ll feed, seed, fertilizer and other supplies now owned or hereafter at any time acquired by Debtor for use in connection with its farming operation." American perfected its interest in the Debtors' property through a financing statement filed with the Stark County Register of Deeds on May 28, 1981. Property listed in the financing statement included "[a]ll livestock, machinery, vehicles, feed and supplies now owned and hereafter acquired."

The Debtor entered into a Contract to participate in the 1983 Payment-In-Kind diversion program on March 8, 1983. Under the Payment-In-Kind Diversion Program, a farmer contracts with the government to remove an agreed percentage of his farm's acreage base in designated crops from production. The farmer is required, however, to maintain the land through conservation techniques approved by the United States Department of Agriculture. In exchange for the farmer's non-production of crops and approved conserving use of the land, the government agrees to convey commodity to the farmer equal to a percentage of what his diverted acreage would normally yield. The payment of the commodity is to be made upon request of the farmer at any time during the five-month period beginning with the normal harvest date for the commodity in the farmer's area. *See* 48 Fed.Reg. 9232 (1983) (to be codified at 7 CFR § 770.1–.6). The Debtor in this instance contracted to divert 152 acres which normally would have been planted in corn.

### DISCUSSION

The dispute in the present instance is whether American, by virtue of the security agreement, has a perfected interest in the PIK bushels acquired by the Debtors. The PIK bushels were to be paid in November 1983. Further objections by American to the other claims of exempt property made by the Debtors have been resolved by a stipulation entered into by the parties and filed with the Court on October 5, 1983.

■ Whether the Debtors' PIK bushels in this instance are characterized as feed or crops, it is evident that the PIK bushels are property acquired by the Debtors after commencement of their bankruptcy proceeding. Security interests in property acquired by the debtors after commencement of their bankruptcy proceeding are governed by 11 U.S.C. § 552. Section 552 of the Bankruptcy Code provides, in part:

> [I]f the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552. A security interest in property acquired after commencement of a bankruptcy proceeding only attaches

when the secured party has acquired a valid security interest in property prior to the commencement of the bankruptcy and the property acquired after the bankruptcy proceeding is a proceed or product of that collateral. In the present instance, American must prove that it acquired a valid, pre-petition security interest in collateral which subsequently produced the PIK bushels.

■■■ Because the PIK Diversion Program is a recent and short-lived program, few decisions have been made concerning interests in the PIK bushels. In one recent decision, *In re Preisser*, 33 B.R. 65 (D.Colo. 1983), the court determined that the PIK bushels were proceeds of the debtor's interest in his land. The court reasoned, "Since any grain which the Debtor had grown on this land would have been considered rents or profits of the land, grain which he receives under the PIK program should be treated the same." *Preisser*, 33 B.R. at 67. In *In re Sunberg*, 35 B.R. 777 (Bkrtcy.S.D. Iowa 1983), the court determined that the PIK bushels were proceeds of an executory contract made between the debtor and the government. The court determined in *Sunberg* that in order for a creditor to claim a security interest in the PIK bushels, the creditor must have had a valid, pre-petition security interest in the debtor's "general intangibles." General intangibles are defined under U.S.C. § 9–106 which has been adopted in North Dakota as N.D.C.C. § 41–09–06. Section 41–09–06 of the North Dakota Century Code provides, in part:

'General intangibles' means any personal property (including things in action) other than goods, accounts, chattel papers, documents, instruments, and money.

This Court agrees with the decision in *Sunberg* which finds that the Payment-In-Kind diversion contract is an executory contract which is characterized as a general intangible under the Uniform Commercial Code. The Debtor and the government entered into the Payment-In-Kind Contract, wherein both promised to benefit each other through future performances. The corn which the Debtor may claim under the contract is payment for the conservation and diversion he practiced on his land throughout the 1982 growing season. The PIK bushels which the Debtors have claimed as exempt are a proceed of the executory contract and are certainly not proceeds of the Debtors' feed.

In the present instance, American can offer no evidence that it held a valid, pre-petition security interest in the Debtors' land. Further, the security agreement given American by the Debtors dated April 29, 1981, did not grant any security interest in crops or general intangibles. The source of the PIK bushels in this instance is clearly the executory contract between the Debtors and the government. Since American did not hold a valid, pre-petition interest in the Debtors' contract rights, the PIK bushels are free of any security interest of the creditor.

■■■ The Debtors' claim of the Payment-In-Kind Contract as an exemption was made pursuant to N.D.C.C. § 28–22–03.-1(1). Section 28–22–03.1(1) of the North Dakota Century Code provides that a resident of the state may select as an additional exemption, "In lieu of the homestead exemption, up to $7,500." N.D.Cent.Code § 28–22–03.1(1) (Supp.1983). It is argued that the corn which the Debtors will receive under their Payment-In-Kind Contract may not be exempted under N.D.C.C. § 28–22–03.1(1) for the reason that the proceeds of the contract are not currency. Crops and grain may be exempted, however, under N.D.C.C. § 28–22–02. Section 28–22–02 of the North Dakota Century Code provides, in part:

The property mentioned in this section is absolutely exempt from all process, levy, or sale:

. . . .

8. all crops and grain, both threshed and unthreshed, raised by the debtor on not to exceed 160 acres (64.75 hectares) of land in one tract occupied by the debtor, either as owner or tenant, as his home, but the provisions of this subsection in no way shall affect seed,

farm labor, thresher, or landlord liens, and if the debtor takes advantage of this subsection he shall not avail himself of any additional alternative exemptions provided under this chapter.

. . . .

N.D.Cent.Code § 28–22–02 (Supp.1983). The provision for exempting crops as an absolute exemption only pertains to those crops which were "raised by the debtor." The proceeds of the Payment-In-Kind Contract are not crops which were raised by the Debtor. Therefore, it would not be proper for the Debtors to claim the PIK bushels as exempt under N.D.C.C. § 28–22–02(8).

The Court finds that N.D.C.C. § 28–22–03.1(1) provides for an exemption of property of a value up to $7,500.00. The two Debtors in this instance, as residents of North Dakota, are entitled to exempt property up to a value of $15,000.00. The only property which the Debtors have claimed under N.D.C.C. § 28–22–03.1(1) is the corn which they are entitled to receive under their Payment-In-Kind Contract. Further, the Debtors' claim of the proceeds from the Payment-In-Kind Contract as an exemption does not exceed the limits of the exemption statutes.

Accordingly, IT IS ORDERED:

That the Debtors may claim the PIK bushels, received as a result of their Diversion Contract, as exempt property free of the claims of American Agricultural Credit Corporation.