**In re George BARTON and Nancy Barton dba Barton Farms, Debtors.**

**Bankruptcy No. 83–00839–214.**

United States Bankruptcy Court, E.D. Washington.

March 6, 1984.

Gregory L. Lutcher, Walla Walla, Wash., for debtors.

## MEMORANDUM OPINION

JOHN M. KLOBUCHER, Bankruptcy Judge.

The matter at issue involves a motion by the debtors-in-possession to permit the use of certain proceeds which were received from the United States Department of Agriculture under the recently enacted "Payment-in-Kind" (PIK) program. Aetna Finance Company objects to the use of those proceeds, claiming a security interest therein.

On December 14, 1981 the debtors-in-possession borrowed $1,250,000.00 from Aetna Finance for general farming purposes and to bring other obligations current. This obligation was evidenced by a promissory note and was secured by both a real property mortgage and a security agreement of

even date. The security agreement appears on a printed form and generally covers all accounts, accounts receivable, contract rights, chattel paper, instruments, documents, goods, equipment, machinery, fixtures, materials and supplies, motor vehicles, and all other property whether then owned or thereafter acquired, including general intangibles, choses in action, other rights of the debtor, and proceeds of the foregoing. A specific list of personal property was attached to the security agreement enumerating various items which are customarily used in the conduct of large farm/ranch operations. Conspicuously absent from the security agreement and list of personal property is any reference to farm products or crops. It is conceded by the parties that the security interest was timely and properly perfected.

On February 28, 1983, the Secretary of Agriculture signed amended regulations to implement the PIK program as authorized by Congress in the Agriculture Act of 1949 and amended by the Agriculture and Food Act of 1981. 7 U.S.C. § 1308. Under this special program for acreage diversion, real property which would normally have been devoted to the production of certain crops could, at the election of the farmer, be devoted to other use or non-use in return for which the United States Government would compensate the farmer with surplus grain which had accumulated on the market. The amount of grain the farmer receives for his use or resale is determined by multiplying the base acreage in grain times the historical yield for the particular farm. The purpose and intent of the legislation are self-evident in the present economic atmosphere. In this case the debtors-in-possession elected to devote 2,284 acres of their property to the PIK program and entered into a contract with the United States Government on March 18, 1983 which specifies the terms of that agreement.

In order for the debtors-in-possession to maintain their farm land in a proper manner while complying with the terms of the government contract it was necessary for them to apply certain herbicides to the fallow land. They employed the services of Huntington-Price Associates and Ballou Aviation, Inc. for that purpose, and to ensure the payment for those services the debtors-in-possession assigned a portion of their PIK proceeds to Huntington-Price and Ballou Aviation. The total indebtedness to Huntington-Price and Ballou Aviation is in the amount of $92,820.00, $47,964.00 of which represents services performed on land devoted to the PIK program and $44,-856.00 of which represents services devoted to land which does not qualify for the program.

Aetna quite persuasively urges that the government contract for PIK payments constitutes either an "account" or an "intangible" under applicable definitions of Article 9 of the Uniform Commercial Code. Wash.Rev.Code § 62A.9–106. Aetna argues that both are included within the terms of the security agreement. If so, it would seem to follow that the proceeds of the contract constitute cash collateral which cannot be used by the debtors-in-possession without either consent of the secured creditor or permission of the Court under appropriate principles of bankruptcy law. 11 U.S.C. §§ 363, 552.

The debtors-in-possession urge that the assignment to Huntington-Price Associates and Ballou Aviation, Inc. should be honored and that they should be permitted to use the balance of the PIK proceeds for the payment of attorney fees, labor, fuel, and other expenses incurred in the ordinary course of their farming operations.

At a prior hearing, it was determined to be within the power of the Court under 11 U.S.C. §§ 503(b)(1)(A), 506(c) to allow payment from the PIK proceeds for herbicide expenses incurred on the property devoted to the PIK program. Accordingly, the Court orally permitted payment of $36,-544.00 to Huntington-Price, and $11,420.00 to Ballou Aviation, deferring a decision as to disposition of the remaining proceeds.

This Court is inclined to believe that the rights of debtors-in-possession to receive payment under the government contract is a "general intangible" within the meaning

of the Uniform Commercial Code and that a security interest therein may be properly perfected under Article 9 of the Uniform Commercial Code. That is not found to be dispositive of the issues in this case, however, for the following reasons.

It is important to realize in this case that we are not dealing with conflicting priorities in a security interest, nor are we dealing with the trustee's avoidance powers under principles of bankruptcy law. We are dealing rather with the intent of two parties to a contract in an effort to determine their relationship and the obligations flowing therefrom. That interpretation does not in the opinion of this Court require the rigid application of Uniform Commercial Code mandates which may be applicable to other relationships.

■ The principal inquiry in this case is whether Aetna Finance and the debtors-in-possession intended the security interest to encompass the proceeds in question. One of the express underlying purposes of the Uniform Commercial Code is to permit the continued expansion of commercial practices through custom, usage and agreement of the parties. Wash.Rev.Code § 62A.1–102. Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity, including the law merchant or other validating or invalidating cause supplement its provisions. Wash.Rev.Code § 62A.1–103. *Bank of the West v. Wes-Con Development Co., Inc.,* 15 Wash.App. 238, 548 P.2d 563 (1976).

■ Basic principles of contract law require that the parties reach a meeting of the minds. *Everett v. Estate of Sumstad,* 26 Wash.App. 742, 614 P.2d 1294 (1980), *rev'd on other grounds,* 95 Wash.2d 853, 631 P.2d 366 (1981). The PIK program was not in existence at the time debtors-in-possession and Aetna Finance negotiated the security agreement, and it would appear unreasonable to assume that either party contemplated its enactment. Reviewing the documents executed by those parties would lead one to conclude that they intentionally excluded crops and farm products from the security agreement. A reasonable purpose

for that omission would be to permit the debtors-in-possession to continue their normal farming operations through the use of proceeds from the sale of crops and other farm products.

If the above assumptions are correct this Court believes that a proper determination of the principal issue in this case requires a comprehensive analysis of the PIK program and a balancing of the effects of that program against the objectives which the parties desired to achieve. A review of the regulations of the Department of Agriculture leads this Court to the inescapable conclusion that the proceeds of the program were intended to replace those funds which would otherwise have been available from the 1983 crops for the farmer to economically continue his operations. An interim rule published in the Federal Register on January 12, 1983 invited public comments. Over 65% of the comments received were concerned with seven issues. One of those issues concerned the time when payments would be made available. The Department responded as follows:

> Payments in kind are intended to compensate producers who have reduced their acreages which would have otherwise been planted to the 1983 crops .... Accordingly, quantities of these commodities which are made available as payment-in-kind are considered to be 1983 production.

48 Fed.Reg. 9,233 (1983).

The conclusion is equally inescapable that if the parties did not intend to include crops and their proceeds in the security agreement, they would not have intended to include items which stand in direct substitution of those crops and proceeds.

This conclusion is supported by two cases which have held that when the parties intended to include "crops" in the security agreement, the security interest encompassed government subsidy payments. In *In re Preisser,* 33 B.R. 65 (Bkrtcy.D.Colo. 1983), the United States Bankruptcy Court for the District of Colorado held that PIK proceeds were encompassed by a security agreement which covered crops grown upon the land. Obviously the Court in that case

548

felt that the parties had intended to include crops in their security agreement, and apparently the security interest was properly perfected under Colorado law. In the instant case, on the contrary, the documents viewed from their four corners give every appearance of an intent to exclude crops from the security interest.

In accord is *In the Matter of Munger,* 495 F.2d 511 (9th Cir.1974) where the Court assumed that the security agreements which covered "all crops" and "proceeds" thereof were drafted with an awareness of the importance of the various government subsidy payments to the financing of farming operations. *Id.* at 513.

This matter has come before the Court on affidavits which do not directly address some of the factual conclusions assumed by the Court in the above opinion. The Court may have been unwarranted in some of those conclusions. Consequently, the parties will be given a period of ten (10) days following the entry of this opinion in which to submit additional affidavits relating to the factual intent of the parties at the time of execution of the security agreement. If a factual dispute is presented a hearing will be necessary. Otherwise, the debtors-in-possession may prepare and present an Order permitting disbursal of the remaining PIK proceeds in the normal course of their farming operations.