In re William Earl JUDKINS and
Glenda F. Judkins, Debtors.

John C. McLEMORE, Trustee, Plaintiff,

v.

MID–SOUTH AGRI–CHEMICAL CORP.,
United States Dept. of Agriculture,
Defendants.

Bankruptcy No. 283–01082.
Adv. No. 283–0472.

United States Bankruptcy Court,
M.D. Tennessee.

Aug. 10, 1984.

Stephen M. Miller, Denney, Lackey & Chernau, Nashville, Tenn., for plaintiff.

Sylvia Ford Brown, Asst. U.S. Atty., Nashville, Tenn., for U.S. Dept. of Agriculture.

W. Michael Corley, Smithville, Tenn., for Mid-South Agri-Chemical Corp.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The trustee's complaint seeks to recover Payment-in-Kind ("PIK") certificates of entitlement owing to the debtors. The issues are: (1) whether PIK payments constitute crop "proceeds;" and (2) whether the debtors' assignment of PIK wheat payments to one of the defendants constitutes a preferential transfer. After consideration of the briefs, arguments and stipulations, the court holds that PIK entitlements are "proceeds," and the assignment of wheat PIK to Mid-South Agri-Chemical Corporation ("Mid-South") constituted a preferential transfer. However, Mid-South holds a properly perfected security interest in the debtors' corn PIK, the Farmers Home Administration ("FmHA") holds a perfected security interest in PIK for the debtors' wheat crop, and these security interests are enforceable post-bankruptcy.

The following constitute findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

### I.

The facts are stipulated. On April 27, 1983, William Earl and Glenda F. Judkins ("debtors") filed a voluntary Chapter 11 petition. Prior to the filing, the debtors farmed several parcels of leased property in DeKalb County, Tennessee.

Mid-South is a creditor holding a security interest in the debtors' corn crop. Mid-South's security interest was perfected June 2, 1982 and extends to "proceeds" of the corn crop.

FmHA is a creditor holding a security interest in "all crops, annual and perennial, and other plant products now planted,

growing or grown, or which are hereafter planted or otherwise become growing crops or other plant products" of the debtors. The FmHA perfected its security interest on June 23, 1982 and June 24, 1982. The financing statements covered all "proceeds" from the debtors' crops.

On January 28, 1983, the debtors executed a "Contract to Participate in the 1983 PIK Diversion Program" with the Commodity Credit Corporation ("CCC") covering four of their leased farms. A contract for the fifth farm was executed March 10, 1983. The contracts were approved March 18, 1983 and the debtors became entitled to deficiency and diversion payments.

On March 25, 1983, the debtors filed a "Payment-in-Kind Assignment and Power of Attorney" with the CCC designating Mid-South as their assignee for diversion payments, including payments due for the nonproduction of wheat. The debtors also compromised the outstanding balance of an earlier promissory note by executing a demand note to Mid-South.

The debtors thereafter received several installments under the PIK program.[1] The remaining PIK certificates were delivered to the trustee to be sold. The trustee liquidated 7,657 bushels of corn for $25,153.24 and 829 bushels of wheat for $2,677.67.

## II.

If PIK entitlements constitute "proceeds" to which a creditor's security interest in crops attaches although the crops are never planted then the creditors prevail over the trustee in this proceeding. Although the issue of whether PIK payments are "proceeds" is one of first impression in this district, other courts have held that crop subsidy and crop entitlement payments do constitute "proceeds" of the crops involved. In the leading case, *Pombo v. Ulrich (In re Munger)*, 495 F.2d 511 (9th Cir.1974), the United States Court of

Appeals for the Ninth Circuit explained that federal sugar beet abandonment payments were "proceeds" subject to security agreements covering the crops they replaced:

> Although resembling insurance payments, these subsidy payments flow not from private contract between the debtor and a third party, but rather from a government program designed to protect both the United States ... and [farmers] ... Abandonment payments, like the subsidy payments, ... are an integral part of the ... farming business and, when received, are within a broad reading of "proceeds." *Not to include such payments within the term "proceeds" would be to raise distinctions of form over the realities underlying this financing transaction, a result contrary to the intent of the Uniform Commercial Code.* (emphasis added).

*Id.* at 513. Other decisions, including several dealing directly with PIK entitlements, are in unanimous accord. *In re Sunberg*, 35 B.R. 777, 783–784 (Bankr.S.D.Iowa 1983) *aff'd*, 729 F.2d 561 (8th Cir.1984) (the term "proceeds" is not limited to the technical definition contained in the UCC, but covers any property into which property subject to a security interest is converted.); *Wapakoneta Production Credit v. Cupp*, 38 B.R. 953, 955 (Bankr.N.D.Ohio 1984) (because the term "proceeds" is intended to apply to that which is produced from a creditor's collateral which, in the absence of the PIK program, would have been grown, it must also apply to that which is produced as though it had been growing; therefore, it would follow the PIK proceeds are proceeds of the crops within the meaning of the security agreement); *In re Barton*, 37 B.R. 545, 547 (Bankr.E.D.Wash. 1984) (security agreement covering debtor's crops encompasses government subsidy programs); *In re Kruse*, 35 B.R. 958, 965 (Bankr.D.Kan.1983) (government entitlement programs, including PIK pay-

---

1. Refunds, however, were required because crops were grown on some of the leased properties in violation of PIK regulations. The advances were offset by agreement against pay-

ments otherwise accruing under the program. The United States Department of Agriculture is an unsecured claimant for the amount of advances which remain unrecouped.

ments, are "proceeds" of planted crops); *In re Lee*, 35 B.R. 663, 666–667 (Bankr.N. D.Ohio 1983) (PIK payments are substitutes for the crop the debtors would have planted, thus any corn or monies received by debtors under PIK contract are "proceeds." Because any corn grown on the debtors' farm would have been covered by security interest, the crop substitute—benefits under the PIK program—should be treated the same); *In re Preisser*, 33 B.R. 65, 67 (Bankr.D.Colo.1983) (government benefits the debtor receives for the nonproduction of grain is a substitute for what would have been produced); *In re Nivens*, 22 B.R. 287, 291 (Bankr.N.D.Tex.1982) (subsidy payments are a substitute for crops and are "proceeds;" therefore, the creditor's security interest continues in deficiency and disaster payments).

▆▆▆ This court agrees that PIK entitlements constitute "proceeds" of crop collateral, even if the crop was never planted.[2] TENN.CODE ANN. § 47–9–306(1) provides that:

"Proceeds" includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money,

checks and the like are "cash proceeds." All other proceeds are "noncash proceeds."

The definition of "proceeds" should be given a flexible and broad interpretation. *National Acceptance Co. v. Virginia Capital Bank*, 498 F.Supp. 1078, 1082 (E.D.Va. 1980); *Reymet Federal Credit Union v. Jones*, 19 B.R. 293, 296 (Bankr.E.D.Va. 1982).[3] "Proceeds" constitute whatever is substituted for the original collateral. *In re SMS, Inc.*, 15 B.R. 496 (Bankr.D.Kan. 1981); *In re J & J Auto Sales, Inc.*, 9 U.C.C.REP. 909, 912 (E.D.Tenn.1971). Under federal agricultural regulations PIK entitlements are considered substitutes for the crops that otherwise would have been planted:

Payments in kind are intended to compensate producers who have reduced their arrearages which would have otherwise been planted to the 1983 crops ... Accordingly, quantities of these commodities which were made available as payment-in-kind are considered to be 1983 production.

48 Fed.Reg. 9, 233 (1983). The contract rights created when participation in the PIK program is approved are "substituted" for the crops that would have been harvested, but for participation in the program.[4]

---

**2.** The court in *Kruse* made a distinction between subsidy payments to abandon or destroy crops and subsidy payments not to plant particular crops. This court does not share the application of such a distinction. The phrase "other disposition" is extremely broad and encompasses any type of disposition, actual or constructive. *In re Nivens*, 22 B.R. at 291 n. 4. The term "other disposition" is sufficiently broad to cover PIK payments received in lieu of the originally crop collateral. When a debtor contracts for PIK payments, the debtor precludes the creation of the corresponding crop collateral. Participation in the PIK program "disposes" of the debtor's crops by precluding their cultivation. This issue is irrelevant with regard to the PIK entitlements allocable to wheat in the instant case because a wheat crop was originally planted, but mowed under when the debtors contracted to participate in the PIK program.

**3.** Courts have broadly interpreted the concept of "proceeds" in determining whether insurance benefits are "proceeds." *See, e.g., Ettinger v. Central Pennsylvania National Bank*, 634 F.2d 120, 125 (3d Cir.1980); *Brown v. First National*

*Bank*, 617 F.2d 581 (10th Cir.1980); *Aetna Insurance Co. v. Texas Thermal Industries, Inc.*, 591 F.2d 1035 (5th Cir.1979); *PPG Industries, Inc. v. Hartford Fire Insurance Co.*, 531 F.2d 58, 61 (2d Cir.1976).

**4.** Two courts have characterized PIK payments as "general intangibles." *See In re Schmidt*, 38 B.R. 380, 383 (Bankr.D.N.D.1984) and *In re Sunberg*, 35 B.R. at 779. Under Tennessee law PIK entitlements seem more appropriately to fit the UCC definition of "contract rights." TENN. CODE ANN. § 47–9–106 provides in relevant part:

"Contract right" means any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper. "General intangibles" means any personal property (including things in action) *other than* goods, accounts, *contract rights*, chattel paper, documents and instruments. (emphasis added).

The debtors' participation in the PIK program gave rise to contract rights that would be earned through compliance with Department of Agri-

The PIK payments are traceable to the crops subject to the defendants' security interests.[5] The PIK entitlements are for specific crops, on specific acreage, and for specific production.[6] Such a nexus between the entitlements and the original collateral indicates that participation in the PIK program was a substitute for the planting of the crop collateral.

A liberal construction of "proceeds" is necessary to avoid unintended interference with the objectives of federal agricultural subsidy programs. The trustee's interpretation would impair the effectiveness of the subsidy programs because encumbered crops would disqualify participation in federal subsidy programs or produce the anomolous result that the government would eviscerate its own security interest (and the interests of other "crop" financers) in crop collateral by approving a debtor's participation in subsidy programs.

> It would create an unconscionable means by which a farmer could defeat a creditor's security. If PIK payments were not proceeds, a farmer could abandon all farming activities in favor of program participation, thereby allowing him to dissipate the proceeds of the programs

without any regard for their creditor's interests. Such a result cannot be permitted.

*Wapakometa Production Credit v. Cupp,* 38 B.R. at 956. Certainly this result was not intended and should not be judicially imposed. A flexible interpretation of the concept of "proceeds" promotes responsible management of farming operations by allowing alternatives to growing crops while simultaneously protecting creditors' security interests.

■ The defendants' security interests in crop "proceeds" survives the filing of the bankruptcy petition. 11 U.S.C.A. § 552 (West 1979)[7] provides in relevant part:

> (b) Except as provided in section 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before the commencement of the case and *if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds,* product, offspring, rents, or profits of such property, *then such security interest extends to such proceeds,* product, off-

---

culture regulations and would terminate if crops were planted on the subject land. The trustee's argument that PIK payments are not "proceeds" because of this change in form from "crops" to "contract rights" is without merit. Merely because the collateral changed from "farm products" to "contract rights" does not defeat the validity and enforceability of the defendants' security interests in "proceeds." TENN.CODE ANN. § 47–9–203(1)(b) provides:
> In describing collateral, the word "proceeds" is sufficient without further description to cover proceeds of any character.

The UCC does not mandate that financing statements delineate or specifically outline what form "proceeds" may take. The UCC envisions that proceeds may be in any form, including contract rights. In fact, proceeds will almost always be in a different form than the original collateral.

5. A creditor asserting a security interest in PIK payments must prove a nexus between the PIK entitlements and the original collateral. If the original collateral was a wheat crop, for instance, the security interest would not attach to entitlements pursuant to subsequent participation in a soybean diversion program. Similarly,

the security interest would be limited to subsidy payments from the yield on the acreage subject to the original security agreement. The defendants have satisfied these burdens in the stipulated facts.

6. The court rejects the trustee's contention that PIK payments are proceeds only if the creditor holds a security interest in the debtors' land. One case characterized PIK payments as analogous to "rents and profits" from the debtor's land, *In re Preisser,* 33 B.R. at 67. This court does not reach the question whether PIK payments may be classified as "rents and profits," but notes that such is not essential to a finding that PIK entitlements are "proceeds" subject to a security interest in the crops they replace.

7. The legislative history of § 552 underscores that "proceeds" should be given a broad interpretation.
> The term "proceeds" is not limited to the technical definition of that term in the UCC, but covers any property into which property subject to the security interest is converted. H.R.REP. NO. 595, 95th Cong., 1st Sess. 377 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6333.

spring, rents, or profits *acquired by the estate after the commencement of the case to the extent provided by such security agreement* and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. (emphasis added).

The trustee has not alleged any defects in the security agreements or financing statements that would nullify the defendants' security interests. FmHA, therefore, has a continuing security interest in all of the debtors' crops and crop proceeds. Mid-South, however, has a first priority in the debtors' corn crop and corn proceeds by virtue of its prior perfected security interest.[8]

■ The debtors' assignment of PIK wheat entitlements to Mid-South constitutes an avoidable preference. The Bankruptcy Code prescribes six elements that must be proven before a transfer is avoidable as preferential: (1) the transfer of property of the debtor; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) made while the debtor was insolvent; (5) within 90 days before the filing of the petition; (6) that enables the creditor to receive more than the creditor would have received if the transfer had not been made if the case were a liquidation case under Chapter 7. 11 U.S.C.A. § 547(b) (West 1979). The PIK wheat rights were property of the debtors. The assignment was made as a result of a consolidation of antecedent indebtedness, while the debtor was insolvent,[9] and within 90 days before the filing of the bankruptcy petition. The assignment of the wheat payments granted Mid-South a larger security interest than it held under its prior security agreement that covered only corn and soybeans. All the elements necessary

to comprise a preferential transfer are proven. Mid-South alleges no exceptions to which it would be entitled under 11 U.S.C.A. § 547(c) (West 1979).

Accordingly, the court finds that although the assignment of PIK wheat payments is an avoidable preference,[10] Mid-South has a valid first lien superior to the FmHA in PIK corn entitlements, but secondary to the FmHA in the wheat entitlements. The trustee, therefore, has no interest in the PIK payments and should turn over the monies to the respective parties.

An appropriate order will be entered.

---

8. Security interests of the kind at issue in this proceeding are entitled to priority in order of filing. TENN.CODE ANN. § 47–9–312(5)(a).

9. 11 U.S.C.A. § 547(f) (West 1979) provides in relevant part:

For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

*Mid-South tendered no proof to rebut this presumption.*

10. The preferential assignment of PIK payments and the execution of the demand note do not impair Mid-South's security interest in proceeds from the debtors' corn crop.