**PRODUCTION CREDIT ASSOCIATION OF FAIRMONT, Appellant,**

v.

**MARTIN COUNTY NATIONAL BANK OF FAIRMONT, Minnesota, Respondent.**

No. C2–85–1671.

Court of Appeals of Minnesota.

April 1, 1986.

Review Denied May 29, 1986.

Gary W. Koch, Gislason, Dosland, Hunter & Malecki, New Ulm, for appellant.

Fred C. Krahmer, Krahmer Law Firm, P.A., Fairmont, for respondent.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

This case arises out of a dispute between two creditors regarding the status of payments made to the debtor Darrell Peterson pursuant to the United States Department of Agriculture's Payment-in-Kind (PIK) program. The trial court granted summary judgment in favor of respondent Martin County National Bank (Bank) on the grounds that the Production Credit Association of Fairmont (PCA) did not have a security interest in the PIK payments made to the debtor. The PCA appeals. We reverse.

## FACTS

The parties submit this appeal on stipulated facts as follows:

The PCA issued a loan to Darrell and Candace Peterson on December 22, 1980, and the Petersons executed a security agreement which described the collateral as follows:

> [T]he Collateral includes the following designated property, whether now owned or hereafter acquired, and all proceeds of such property. All Collateral * * * is covered regardless of whether it is classified under the Uniform Commercial Code as equipment, farm products or inventory and regardless of whether or not such classification changes.
>
> 2.1 All equipment, motor vehicles and fixtures, all accessions thereto, and all spare parts and special tools for such equipment.

2.2 All livestock and poultry and the young of such livestock and poultry.

\* \* \* \* \* \*

2.5 All crops growing or to be grown by Debtor, and the products of all such crops, on real estate [owned by the Petersons in Martin County].

2.6 All harvested and processed crops not covered under other sections of this Agreement (whether or not produced by Debtor); feed, seed, fertilizer, insecticides, herbicides, and other agricultural chemicals; and other supplies \* \* \*.

On December 24, 1980, the PCA perfected its security interest by filing a financing statement that described the property listed above in the Martin County Recorder's office. The PCA filed a similar financing statement in the Todd County Recorder's office on March 31, 1982. The PCA does not have a perfected security interest in the Petersons' accounts, contract rights or general intangibles.

In August 1982, after the PCA informed the Petersons that it would no longer finance their farm, the Petersons borrowed money from a local bank to pay for 1982 crop and livestock expenses and for 1983 operating costs. The PCA received all of the proceeds from the 1982 crop and livestock.

In the spring of 1983, Darrell Peterson entered into the PIK program operated by the Commodity Credit Corporation (CCC), a branch of the United States Department of Agriculture. Under the PIK program, the federal government gave participating farmers a quantity of grain in return for their agreement to take cropland out of production in 1983. The allotment of grain that a participating farmer received was based upon the amount of grain that the farmer would have produced on the PIK acres as evidenced by past production records. Pursuant to the PIK program, Peterson agreed to withdraw all of his crop acreage from production and plant a cover crop (such as grass). The CCC agreed to give Peterson 29,210 bushels of corn from its crop inventory in storage.

The PCA was aware that Peterson was participating in the PIK program, but it did not secure an assignment of Peterson's PIK entitlements nor did it amend its security agreement or financing statements. The PCA believed that the PIK entitlements were included as collateral under the existing security agreement.

In July 1983 the Bank loaned $50,000 to Darrell Peterson. As security for that loan, Peterson assigned the Bank his PIK entitlements. The Bank considered that the loan was a guaranteed loan, so it did not examine Peterson's financial situation, check for prior security interests or file a financing statement.

The Petersons filed a bankruptcy petition on October 12, 1983.

Subsequently, the Bank received a PIK entitlement form entitling it to 29,210 bushels of corn that were in storage at the Bunge Corporation in Fairmont. On November 2, 1983, after talking with Darrell Peterson, the Bank instructed the Bunge Corporation to sell the corn. From the proceeds of $91,135.20, the Bank kept $50,000 plus interest of $1,986.30 as payment of its loan and it remitted the remaining $39,148.90 to Peterson and his attorney.

As of February 15, 1985, the Petersons owed the PCA approximately $409,000 in principal and approximately $489,000 in interest. The PCA brought this action against the Bank to recover the $51,986.30 in PIK proceeds that the Bank retained.

Both parties sought summary judgment based on the stipulated record. The trial court awarded summary judgment in favor of the Bank on the ground that Peterson's "right to receive payment-in-kind pursuant to the PIK contract was a general intangible and thus was not covered by [the PCA's] security agreement and financing statements."

## ISSUE

Did the trial court err in concluding that appellant's security interest did not extend

to the PIK entitlements which the debtor assigned to respondent?

## ANALYSIS

The function of a court reviewing a summary judgment award is to determine whether there are any genuine issues of material fact for trial and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). On appeal, the parties only address the correctness of the trial court's application of the law. This court need not give deference to a trial court's decision on a legal issue. *Frost-Benco Electric Association v. Minnesota Public Utilities Commission*, 358 N.W.2d 639, 642 (Minn.1984).

The issue before us is whether PIK entitlements are included as collateral in the security agreement executed between the PCA and Darrell Peterson. If the PIK entitlements are crops or crop proceeds as described in the security agreement and the financing statements, then the PCA has a perfected security interest in them. If the PIK entitlements are only proceeds of accounts, contract rights or general intangibles, then the PCA does not have a security interest in the PIK entitlements, because those categories were not described as collateral in the security agreement or the financing statements. The Bank would then have a superior security interest in the PIK entitlements.

The trial court determined that PIK entitlements are proceeds of a general intangible and thus not covered by the PCA's security agreement.

There is no state law on the issue before us, but there are several cases from other jurisdictions that address the issue. A leading case is *In re Sunberg*, 729 F.2d 561 (8th Cir.1984). The security agreement at issue in *Sunberg* provided a security interest, *inter alia*, in the debtors' "existing or hereafter acquired * * * crops, growing crops, livestock, farm products, equipment, inventory, fixtures, contract rights, accounts and general intangibles." *Id.* at 561. The circuit court held that the debt-

ors' rights under the PIK program were subject to the creditor's security interest. The court did not specifically identify under which category of collateral the PIK entitlements fell, but the court did quote the relevant state commercial code definitions of "general intangibles" and "account." *Id.* at 562.

In determining that PIK entitlements are proceeds of a general intangible, the trial court here interpreted *Sunberg* as holding that PIK benefits are exclusively general intangibles. Other courts have interpreted *Sunberg* the same way. *See In re Mattick*, 45 B.R. 615, 617 (Bankr.D.Minn.1985); *In re Frasch*, 53 B.R. 89, 90 (Bankr.D.S.D. 1985) (milk diversion program payments are not "proceeds" of anything); *In re Schmidt*, 38 B.R. 380, 383 (Bankr.D.N.D. 1984).

The *Sunberg* decision does not preclude finding a valid security interest in PIK entitlements where the security agreement in issue does not apply to "general intangibles." The court in *Sunberg* simply found that the PIK entitlements were proceeds of either a general intangible or an account, two broad collateral categories described in the relevant security agreement. *Sunberg* does not preclude a finding that PIK entitlements are also proceeds of crops. *See Osteroos v. Norwest Bank Minot*, 604 F.Supp. 848, 849 (D.N.D.1984) (following this interpretation of *Sunberg*).

Other courts have directly addressed the issue of whether PIK entitlements are crop proceeds. Some courts conclude that PIK payments are not crop proceeds because they stem from an agreement not to grow crops, and therefore they cannot be proceeds of anything. *See, e.g., Mattick*, 45 B.R. at 617; *In re Kruse*, 35 B.R. 958, 966 (Bankr.D. Kansas 1983). *See also In re Binning*, 45 B.R. 9, 12 (Bankr.S.D. Ohio 1984) (PIK payments are not crop proceeds). The trial court here adopted this approach.

Other courts conclude that PIK entitlements are crop proceeds based on the rationale that PIK entitlements are a substitute

for the crops that a participating farmer would otherwise have raised. In *Osteroos,* a security agreement covered "[a]ll farm products * * * including but not limited to all crops * * * and the products thereof * * *." 604 F.Supp. at 848. The bankruptcy court, relying on *Sunberg,* held that under the terms of that agreement the creditor was not entitled to the PIK payments that the debtors received. In reversing the bankruptcy court, the federal district court observed:

> Had the Debtors grown corn during the 1983 season, it would have been covered by the security agreement. The PIK payments were received as a substitute for the corn the Debtors would otherwise have planted. The PIK payments, though different in form, are analogous to cash payments received under federal deficiency and disaster programs; such cash payments have been determined to be covered by a security agreement covering "crop proceeds." The language of the instant security agreement covering "all crops ... and the products thereof" and the language of the instant financing statement covering "the proceeds and products of such crops" are sufficient to give [the creditor] a security interest in the PIK payments.

*Id.* at 849 (citations omitted). *See also Apple v. Miami Valley Production Credit Association,* 614 F.Supp. 119, 123 (S.D. Ohio 1985); *In re Judkins,* 41 B.R. 369, 372–73 (Bankr.M.D.Tenn.1984); *In re Cupp,* 38 B.R. 953, 955 (Bankr.N.D. Ohio 1984); *In re Lee,* 35 B.R. 663, 666 (Bankr. N.D. Ohio 1983).

We believe the approach taken by the *Osteroos* court is a well-reasoned one. If Darrell Peterson had grown crops during the 1983 season, the crops would have been covered by the security agreement. Peterson received the PIK benefits in place of the crop he would have otherwise planted. While we agree with the trial court that PIK entitlements may be contract rights or general intangibles, we do not believe that this classification precludes a determination that PIK entitlements are also crop proceeds.

Further, we recognize that literally there are not any crops from which to proceed when PIK benefits are defined as crop proceeds. The result we reach here, however, is consistent with the broad definition of "proceeds." Minn.Stat. § 336.9–306 (1984) defines proceeds as including "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." In light of this broad definition, we believe the word "proceeds" must be given a liberal interpretation. *See In re Munger,* 495 F.2d 511, 513 (9th Cir.1974). *See also* R. Hillman, J. McDonnell & S. Nickles, Common Law and Equity Under the Uniform Commercial Code § 22.-05[1][a][i], at 22–51 (1985).

We conclude that the security agreement covering "[a]ll crops * * * and the products of all such crops" and "all proceeds of such property," and the accompanying financing statements, give the PCA a security interest in Darrell Peterson's PIK entitlements.

### DECISION

PIK entitlements are proceeds of crops. The PCA's security interest in Darrell Peterson's PIK payments is superior to the Bank's. We direct the trial court to enter judgment in favor of the PCA.

Reversed.