**SWEETWATER PRODUCTION CREDIT ASSOCIATION,** Petitioner,

v.

**James Franklin O'BRIANT, et al., Respondents.**

No. C–7466.

Supreme Court of Texas.

Dec. 14, 1988.

Rehearing Denied March 8, 1989.

C. Michael Ratliff and R. Temple Dickson, Moore, Dickson, Roberts & Ratcliff, Inc., Sweetwater, Tex., for petitioner.

Charles Scarborough, Scarborough, Black, Tarpley & Trimble, Abilene, Tex., Bradley C. Miles, San Angelo, Tex., for respondents.

COOK, Justice.

This case involves the classification of payments to farmers from the federal government's payment-in-kind (PIK) diversion program and thus the proper place of filing to perfect a security interest in these payments. This is an issue of first impression. The court of appeals classified these payments as general intangibles not arising from or relating to the sale of farm products by a farmer, thereby making the proper place of filing in the office of the secretary of state. 745 S.W.2d 412. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Petitioner Sweetwater Production Credit Association (SPCA) had financed the farming operation of cross-respondents James Audus Rowland, Jr., and Steven Craig Rowland, a partnership doing business as Triple R Farms, for many years. On February 8, 1982, the Rowlands, on behalf of Triple R Farms, executed a promissory note for $428,150.10 and a security agreement in favor of SPCA. The security agreement assigned to SPCA a security interest in crops, crop proceeds, and all benefits from any government farm programs for the years 1982, and 1983. On March 4, 1982 SPCA filed an amendment to a prior financing statement involving the Rowlands in the county clerk's office of Fisher County.[1] Triple R Farms executed another promissory note in favor of SPCA for $8100 on January 14, 1983. Both the note for $428,150.10 and the note for $8100 were due on February 15, 1983. The Rowlands defaulted on both notes.

---

1. The amended financing statement added land on which the crops could have been located. The original financing statement, filed on February 19, 1980, covered crops and benefits from any government farm programs. The Rowlands, on behalf of Triple R Farms, had previously executed a promissory note for $202,484.39 and a security agreement in favor of SPCA on February 11, 1980.

On March 29, 1983, the Rowlands entered into six PIK crop contracts. Under the PIK diversion program, which only began in 1983, the Rowlands agreed not to plant cotton. In return the Rowlands would receive a quantity of cotton as payment in kind for the crops not planted. *See* 7 C.F.R. §§ 770.1–.7 (1988). The PIK cotton would then be marketed by the Plains Cotton Cooperative Association (Plains Cotton), which would pay the Rowlands for the cotton it sold.

Respondent James Franklin O'Briant, on April 21, 1983, loaned the Rowlands $155,000. O'Briant is James Audus Rowland, Jr.'s former father-in-law and Steven Craig Rowland's grandfather. The Rowlands executed a promissory note for this amount, payable on demand, in favor of O'Briant and assigned the proceeds of the 1983 PIK contracts. On March 13, 1984, O'Briant filed three financing statements with the office of the secretary of state showing the Rowlands and Triple R Farms as debtors.

In November and December 1983 Plains Cotton made six checks totaling $153,482.25 payable to Triple R Farms and SPCA jointly.[2] It is these funds that are claimed by both SPCA and O'Briant.

O'Briant filed suit against the Rowlands, Triple R Farms, and Plains Cotton on March 2, 1984, seeking the proceeds of the PIK contracts. Plains Cotton tendered $153,481.75 into the registry of the court and brought SPCA into the suit on a cross-complaint. SPCA claimed that it had been assigned the six PIK contracts.

Both O'Briant and SPCA filed motions for summary judgment alleging a superior claim to the PIK proceeds. The trial court granted SPCA's motion for summary judgment and O'Briant and the Rowlands appealed. The court of appeals reversed and rendered.

The parties argue that there are three possible classifications of these PIK contracts. The classification will be determinative of the proper place of filing. At the time this transaction arose section 9.401(a)

of the Texas Business and Commerce Code read, in relevant part, as follows:

(a) The proper place to file in order to perfect a security interest is as follows:

(1) when the collateral is equipment used in farming operations, or farm products, or accounts or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the County Clerk in the county of the debtor's residence ... and in addition when the collateral is crops growing or to be grown in the office of the County Clerk in the county where the land is located;

*       *       *       *       *       *

(3) in all other cases, in the office of the Secretary of State.

Secured Transactions—Revision, ch. 400, § 5, 1973 Tex.Gen.Laws 997, 1019–20, *repealed by* Act of June 15, 1985, ch. 914, § 3, 1985 Tex.Gen.Laws 3081, 3081. As amended in 1985, section 9.401(a) now provides that the proper place to file for all collateral formerly listed in subsection (a)(1) above is in the office of the secretary of state. TEX.BUS. & COM. CODE ANN. § 9.401(a) (Tex. U.C.C.) (Vernon Supp.1988).

If the PIK contracts are proceeds of crops or general intangibles arising from or relating to the sale of farm products by a farmer, then the proper place of filing is in the office of the county clerk of Fisher County. Secured Transactions—Revision, ch. 400, § 5, 1973 Tex.Gen.Laws 997, 1019–20 (repealed 1985). If the proper classification is as a general intangible other than one arising from or relating to the sale of farm products, then the proper place of filing is in the office of the secretary of state. *Id.*

It is undisputed that if the proper place of filing was the county clerk's office, then SPCA has a perfected security interest in the PIK contracts and thus has priority. TEX.BUS. & COM.CODE ANN. § 9.312(e) (Tex. U.C.C.) (Vernon Supp.1988). Likewise, if the proper place of filing was the secretary of state's office, then O'Briant has a

**2.** These checks were tendered to the payor bank for collection with the indorsement of Triple R

Farms only. They were refused by the payor bank because they were not indorsed by SPCA.

perfected security interest in the PIK contract and thus has priority. *Id.*

We hold that the PIK contracts are proceeds, thereby making the county clerk's office the proper place of filing. First, we note that there is a definite split of authority on this issue.[3] *See* Comment, *Bankruptcy, the U.C.C., and the Farmer: PIK Payments—Heads "General Intangibles," Tails "Proceeds" [In re Schmaling, 783 F.2d 680 (7th Cir.1986) ],* 26 Washburn L.J. 178, 183 nn. 32–33. However, we think the better reasoned view is the one that classifies PIK contracts within the definition of proceeds. Proceeds includes *whatever* is received upon the sale, exchange, collection, *or other disposition* of collateral. TEX.BUS. & COM.CODE ANN. § 9.306(a) (Tex. U.C.C.) (Vernon Supp.1988). This definition gives the word "proceeds" a flexible and broad scope. *In re Munger,* 495 F.2d 511, 513 (9th Cir.1974); *In re Nivens,* 22 B.R. 287, 291 n. 4 (Bankr.N.D.Tex.1982) (applying Texas law); *Rainier Nat'l Bank v. Bachmann,* 111 Wash.2d 298, 301–02, 757 P.2d 979, 981–82 (1988).

Several other courts have also concluded that PIK payments are proceeds. *Apple v. Miami Valley Prod. Credit Ass'n,* 614 F.Supp. 119, 123–24 (S.D.Ohio 1985); *Osteroos v. Norwest Bank Minot, N.A.,* 604 F.Supp. 848, 849 (D.N.D.1984); *In re Judkins,* 41 B.R. 369, 370–73 (Bankr.M.D.Tenn. 1984); *In re Cupp,* 38 B.R. 953, 954–55 (Bankr.N.D.Ohio 1984); *In re Lee,* 35 B.R. 663, 666 (Bankr.N.D.Ohio 1983); *In re Preisser,* 33 B.R. 65, 66–67 (Bankr.D.Colo. 1983); *Production Credit Ass'n v. Martin County Nat'l Bank,* 384 N.W.2d 529, 532 (Minn.Ct.App.1986). This result effects the intent of the parties as the PIK contracts are merely substitutes for the crops that otherwise would have been planted. *Oste-*

*roos v. Norwest Bank Minot, N.A.,* 604 F.Supp. at 849; *In re Cupp,* 38 B.R. at 955; *In re Lee,* 35 B.R. at 666; *In re Preisser,* 33 B.R. at 66–67; *Production Credit Ass'n v. Martin County Nat'l Bank,* 384 N.W.2d at 531–32. The term "proceeds" should apply to that which is produced as though it had been grown.

Had the Rowlands planted crops in 1983 instead of entering into the PIK contracts, SPCA would clearly have had a perfected security interest in these crops. The Rowlands should not be able to defeat the security interest merely because they entered into the PIK contracts instead of planting crops; this would be an unconscionable means by which a creditor's security interest could be defeated.[4] As a result, SPCA properly perfected its security interest in the PIK contracts.

Accordingly, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

---

**3.** Some courts have stated that the prevailing view is that PIK payments are general intangibles rather than proceeds. *E.g., In re Schmaling,* 783 F.2d 680, 683 (7th Cir.1986); *Rainier Nat'l Bank v. Bachmann,* 111 Wash.2d 298, 313, 757 P.2d 979, 987 (1988) (Dore, J., dissenting). Our research has shown, however, that the split is much more even with neither view clearly prevailing.

**4.** Some courts have made a distinction between the situations where the debtor actually planted crops and those where no crops were planted. *See, e.g., Rainier Nat'l Bank v. Bachmann,* 111 Wash.2d 298, 313, 757 P.2d 979, 987 (1988) (Dore, J., dissenting). We do not think such a distinction is justified. *See In re Nivens,* 22 B.R. at 291 n. 4. The definition of proceeds is broad enough to permit any type of disposition, whether actual or constructive. *Id. See also In re Judkins,* 41 B.R. at 372 n. 2.