Odd A. OSTEROOS and Dorothy E. Oste-
roos, individually and d/b/a Hesnault
Ranch and Hesnault Irrigation; and
Odd L. Osteroos and Garvin Osteroos,
individually and d/b/a Hesnault Irriga-
tion, Debtors and Appellees,

v.

NORWEST BANK MINOT, N.A., f/k/a
First National Bank in
Minot, Appellant.

Civ. No. A4–84–201.

United States District Court,
D. North Dakota,
Northwestern Division.

Dec. 18, 1984.

Michael G. Sturdevant, Minot, N.D., for
debtors and appellees.

Max D. Rosenberg, Bismarck, N.D., for
appellant.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

Norwest Bank Minot (Norwest) appeals
from an August 8, 1984 order of the Bank-
ruptcy Court for the District of North Da-
kota. In that order, the Bankruptcy Court
determined that the Debtors were entitled
to proceeds of grain received under the
federal Payment-In-Kind (PIK) program
free of any claim of Norwest.

### FACTS

The parties entered into a stipulation of
the following relevant facts. In a May 19,
1982 security agreement, the Debtors
pledged to Norwest as security for loans
"[a]ll farm products of Debtor, whether
now owned or hereafter acquired, including
but not limited to all crops, whether annual
or perennial, and the products thereof, and
all feed, seed, fertilizer, medicines and oth-
er supplies used or produced by Debtor in
farming operations." In a financing state-
ment filed April 26, 1982, Norwest claimed
a security interest in "[a]ll crops or other
plant products now planted, growing or
grown, or which are hereafter planted or
become growing crops and the proceeds
and products of such crops."

The Debtors harvested 86,735 bushels of
corn from their 1982 farming operation,
which they entered into the federal grain
storage program. In 1983, the Debtors
enrolled in the PIK program. Under the
PIK program, in return for their agree-
ment not to raise corn during the 1983
season, the Debtors received the corn
which they had put into the federal grain
storage program in 1982. The Debtors
then sold that corn.

On May 9, 1983, the Debtors filed a
voluntary petition under Chapter 11 of the

Bankruptcy Code. On September 28, 1983, the Debtors initiated an adversary proceeding to obtain a determination of the nature and extent of Norwest's claims against the Debtors. By stipulation of the parties, that proceeding was limited to a determination of Norwest's interests in payments received under the 1983 PIK program.

The Bankruptcy Court determined that, because it held no security interest in the Debtors' "general intangibles," Norwest was entitled to none of the proceeds of the 1983 PIK payments.

## DISCUSSION

On appeal, Norwest advances four theories in support of reversal of the Bankruptcy Court's order: 1). that Norwest is entitled to the PIK payments solely by reason of its lien on the Debtors' 1982 crops, 2). that Norwest is entitled to the PIK payments under that portion of the security agreement that covered "all farm products ... and the products thereof," 3). that Norwest is entitled to the PIK payments as "substitution or replacement" for the Debtors' 1983 crop, and 4). principles of equity.

The Bankruptcy Court, in reaching its decision, relied on *In Re Sunberg*, 729 F.2d 561 (8th Cir.1984). In *Sunberg*, the court found that a security interest in "existing or hereafter acquired ... crops, growing crops, livestock, farm products, equipment, inventory, fixtures, contract rights, accounts and general intangibles" gave the creditor a security interest in PIK payments. The Bankruptcy Court interpreted *Sunberg* to give a secured creditor an interest in PIK payments only if a security agreement covered "general intangibles." While the court in *Sunberg* relied on a clause in the security agreement covering "general intangibles" in determining that a creditor held a valid security interest in PIK payments, the *Sunberg* decision does not preclude finding a valid security interest in PIK payments where the security agreement does not apply to "general intangibles."

Norwest asserts that its lien attached to the Debtors' crop when it was grown in 1982, and that the PIK payments were in effect proceeds of the 1982 crop. This theory does not account for an intervening event: when the Debtors placed the 1982 crop in storage, they received payment for it. Norwest may have had a lien on that payment. But the PIK payments were not received as proceeds of the 1982 crop; rather, they were received under an agreement that applied to the 1983 crop year.

Norwest also argues that it is entitled to the PIK payments since the security agreement covered "all farm products ... all crops ... and the products thereof." This Court agrees. Had the Debtors grown corn during the 1983 season, it would have been covered by the security agreement. The PIK payments were received as a substitute for the corn the Debtors would otherwise have planted. *See In Re Lee*, 35 B.R. 663 (Bankr.N.D.Ohio 1983). The PIK payments, though different in form, are analogous to cash payments received under federal deficiency and disaster programs; such cash payments have been determined to be covered by a security agreement covering "crop proceeds." *See In Re Munger*, 495 F.2d 511, 513 (9th Cir.1974); *In Re Nivens*, 22 B.R. 287, 291–92 (Bankr.N.D. Tex.1982). The language of the instant security agreement covering "all crops ... and the products thereof" and the language of the instant financing statement covering "the proceeds and products of such crops" are sufficient to give Norwest a security interest in the PIK payments. *See also In Re Judkins*, 41 B.R. 369 (Bankr.M.D.Tenn.1984) (PIK payments constitute "crop proceeds"); *In Re Cupp*, 38 B.R. 953, 955 (Bankr.N.D.Ohio 1984) (PIK payments covered by security agreement which applied to "all products of crops"); *In Re Preisser*, 33 B.R. 65 (Bankr.D.Colo. 1983) (PIK payments determined to be rents or profits of the land and so covered by deed of trust). *But see In Re Kruse*, 35 B.R. 958 (Bankr.D.Kan.1983) (no security interest in PIK payments where security agreement did not apply to "general intangibles").

In light of the foregoing conclusion, it is unnecessary to address the other theories advanced by Norwest.

### CONCLUSION

For the foregoing reasons, IT IS ORDERED:

That the August 8, 1984 order of the Bankruptcy Court is reversed.