**In re Merlyn YAGOW and Delores Yagow, individually and d/b/a D & M Trust, Debtors.**

**Bankruptcy No. 85–05257.**

United States Bankruptcy Court, D. North Dakota.

Jan. 10, 1986.

See also, Bkrtcy., 53 B.R. 737.

Shirley A. Dvorak, Grand Forks, N.D., for debtor.

Brad Sinclair, Fargo, N.D., for PCA, U.S. Trustee.

William Westphal, Trustee, Minneapolis, Minn., (info copy).

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This Order addresses whether Production Credit Association of Fargo (PCA) has a valid lien in the Debtors' 1984 crop. This question, although touched upon in several previous hearings and orders, has not been directly at issue until now.

On November 4, 1985, and November 6, 1985, the Debtors, Merlyn & Delores Yagow, by separate Motions sought leave to use cash collateral derived from the proceeds of their 1984 crop. Use of the proceeds was sought in order to meet an adequate protection payment to Federal Land Bank and meet existing lease obligations. PCA resisted both Motions asserting it has a perfected lien in the 1984 crop and proceeds, an interest for which it has not been offered adequate protection. An expedited hearing on the Debtors' November 4, 1985, Motion was held on November 13, 1985, and the Court denied the Debtors' proposed use for the reason that PCA had not been afforded adequate protection for its interest in the crop.

The Debtors' November 6, 1985, Motion came on for hearing on December 5, 1985, at which time the Debtors for the first time challenged the validity of PCA's security interest in the 1984 crops. The Debtors broached the issue in a Brief filed the day before the hearing wherein they charge that the security agreements by which PCA claims a perfected security interest in the 1984 crops are contrary to section 35–05–04 of the North Dakota Century Code and are thereby invalid. Counsel for PCA had not received the Brief and was unprepared to substantively address the Debtors' argument on such short notice. However at the hearing counsel for PCA orally suggested that the issue was resolved in previous hearings and the doctrine of res judicata prevented the issue from again being

considered. The Court took the matter under advisement giving both parties additional opportunity to brief the issue of lien validity and whether or not res judicata ought to be invoked.

■ The Debtors, in their Brief as well as in a Motion filed November 18, 1985, have also challenged the validity of PCA's lien on the 1985 crop. As the Court previously indicated at the December 5 hearing, the question of the 1985 crop lien will not be specifically addressed herein except insofar as the legal issues now resolved may be the same as those which would of necessity be reached with regards to the 1985 crop issue. The Court notes the Debtors have commenced an adversary proceeding with regard to PCA's claim in the 1985 crop. Although pursuant to Rule 7001 of the Bankruptcy Rules of Procedure the proper vehicle for challenging a creditors' lien is through an adversary proceeding, in the interest of expeditiously resolving this matter in view of the Debtors immediate need for cash, and in view of PCA's failure to object to resolution of the issues in this manner, the Court in this instance will address the issue despite it being raised by motion.

### 1.

■ Preparatory to addressing the Debtors' argument concerning the applicability of section 35–05–04, the Court will address PCA's contention that the issue of the validity of PCA's 1984 lien is res judicata. The doctrine of res judicata prevents parties from relitigating claims which have already been properly decided by the same, or a different court. *See Westwood Chemical Co., Inc. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir.1981). Relitigation of issues actually litigated or which could have been litigated, but were not, is also barred. *Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983). Res judicata, though not an inflexible principle, is intended to promote finality of judgments, discourage multiple litigation, and conserve judicial resources. *Id.*

The Eighth Circuit Court of Appeals recently set forth the generally accepted elements of res judicata, which must be established by a party objection to a later suit:

1) The first suit resulted in a final judgment on the merits;

2) The first suit was based on proper jurisdiction;

3) Both suits involved the same cause of action; and

4) Both suits involved the same parties or their privies.

*Lovell v. Mixon, Id. See also Southmark Properties v. The Charles House Corporation,* 742 F.2d 862, 869 (5th Cir.1984); *Hotel Corp. of South v. Rampart 920, Inc.,* 46 B.R. 758, 764 (E.D.La.1985). In order to resolve whether the doctrine ought to be now applied, it is necessary to recall those previous instances when the question of PCA's interest in the 1984 crop was raised and the manner in which it was resolved.

On May 20, 1985, this Court held a hearing on the Debtors' Motion to recover machinery which had been repossessed by PCA on the day the Debtors filed bankruptcy. For purposes of that hearing, this Court found the value of the Debtors' assets secured by PCA to be $953,500.00, which included a value of $67,500.00 attributed to the remnants of the 1984 crop. The Court found that the encumbrances against the collateral totalled approximately $780,000.00 leaving the Debtors an equity cushion of approximately $173,500.00 which the Court concluded was sufficient to adequately protect PCA's interest in the machinery. PCA was ordered to return the machinery to the Debtors.

Merlyn Yagow, represented by Atty. Dvorak, testified at the May hearing that PCA did have a valid lien on the 1984 crop. The following dialogue occurred while Atty. Minch, counsel for PCA, cross-examined the Debtor, Merlyn Yagow:

MINCH (Q): You do recognize the fact that PCA has a lien on all of your 1984 crops?

YAGOW (A): Uh-huh.

(Q): You do agree to that?

(A): Yeah.

*In re Yagow*, Transcript of Proceedings, pp. 39–40, commencing May 20, 1985.

The May 20, 1985, oral order of the Court reduced to writing on June 11, took into consideration the value of PCA's 1984 crop lien in determining that PCA was adequately protected. This is not to say that this Court would have found PCA not to be adequately protected had the value of the crops and proceeds not been included as collateral. Absent a valid lien in the 1984 crop, an equity cushion of $86,000.00 or 11% would have existed which still would have insured that PCA was adequately protected.

The Debtors filed, on August 27, 1985, a Motion for sale of stored grain, and a Motion to deposit checks representing proceeds in an escrow account stating that PCA held a security interest in the corn and soybeans. PCA filed a return to the Debtors' Motions on August 28, 1985, objecting to sale of the corn and soybeans "unless the Debtors unconditionally admit that the ... corn and ... soybeans represent PCA's collateral." The Court's order entered October 8, 1985, states that "[t]he Debtors do not dispute the fact that these checks are proceeds of the sale of PCA's collateral." The Order further states that "[t]he Debtors do not deny that the corn and beans were grown during 1984 and that PCA has a lien in these crops." Absent from the Order is any language indicating that the Debtors "unconditionally admit" that the corn and soybeans represent PCA's collateral. This Court granted the motion to sell 16,000 bushels of corn and 1500 bushels of soybeans providing, among other things, that the proceeds be deposited in an escrow account. PCA submits that the October 8, 1985, Order of this Court conclusively settled the issue of the validity of PCA's interest and res judicata bars the Debtors from raising the issue in the action before this Court.

One of the elements which must be established before standing on the doctrine of res judicata is that the first suit must have resulted in a *final judgment on the merits*. *Lovell v. Mixon*, 719 F.2d at 1376 (emphasis added). Neither the June 11 or October 8 Order of this Court is considered a final judgment on the merits. In neither hearing did the Debtor disagree with PCA's position that it had a valid lien on the 1984 crop nor was North Dakota Century Code section 35–05–04 ever mentioned. Even though the Orders were entered with the Court being under the impression that PCA held a valid crop mortgage on the 1984 crop, the issue of whether the 1984 crop mortgage is valid under North Dakota statutory law has never been directly before the Court.

This Court's June 11 Order finding PCA adequately protected would have been entered irregardless of whether PCA's crop lien was valid. Likewise, the September 9 Order allowing checks to be cashed and crop to be sold, entered while assuming the crop mortgage was valid, would have been entered irregardless of whether PCA's crop mortgage was valid. Although the portion of the Order providing for the proceeds to be placed in an escrow account would obviously not have been necessary. In neither instance was PCA prejudiced by the Court's Orders entered on the assumption that the lien was valid. "Neither collateral estoppel nor res judicata is to be rigidly applied. Both rules are qualified, or rejected when their application would contravene an overriding public policy or result in manifest injustice". *Westwood Chemical Co., Inc. v. Kulick*, 656 F.2d at 1229 (quoting *Tipler v. E.I. duPont de Nemours and Co.*, 443 F.2d 125, 128 (6th Cir.1971)). This Court's early Orders were not on the merits of the validity of the 1984 crop mortgage and it would be manifest injustice to prevent the Debtors from having an opportunity to have the validity of PCA's security agreements ruled upon. Hence, res judicata does not bar the Debtors from raising the issue before the Court.

PCA in its Brief also relies on the doctrine of collateral estoppel in its belief that the Debtors' objection should not be

heard. "Collateral estoppel precludes relitigation of an issue of fact when 1) the issue is identical to an issue actually litigated in a prior proceeding, 2) determination of that issue was necessary to the resolution of the earlier proceeding and 3) the opportunity to litigate was 'full and fair' ". *City Stores Co. v. Mall, Inc.*, 42 B.R. 685, 688 (Bankr.S. D.N.Y.1984). The purpose of collateral estoppel is not to foreclose a party of its right to put contested facts before the Court, but is to prevent their submission twice. *Id.* Collateral estoppel applies to issues which have been necessarily and directly litigated. *Lovell v. Mixon*, 719 F.2d at 1376. In the case at bar, the issue of whether the security agreement is valid has not been necessarily, directly, or actually litigated; collateral estoppel does not apply.

 Irrespective of the application of res judicata and collateral estoppel on the issue before the Court, and even if a final judgment on the merits has been rendered, section 502(j) of the Bankruptcy Code permits a bankruptcy court to reconsider previously allowed or disallowed claims.[1] Orders allowing or disallowing claims can be reconsidered for cause, either on motion of a party or sua sponte. *Karen Richard Beauty Salon v. Fontainebleau Hotel*, 36 B.R. 896, 897 (Bankr.S.D.Fla.1983). Though a formal hearing has not been held on the validity of PCA's claim and security interest, PCA is essentially arguing that a determination has been made. Thus, the Court concludes that section 502(j) and applicable rules will be applied.

The terms "cause" and "equities of the case" are not defined in section 502(j) and therefore the application and interpretation of their meaning is a matter of judicial construction. *Shaw v. Easter*, 25 B.R. 418, 421 (Bankr.S.D.Ohio 1982). In addition, the Bankruptcy Court has the "ancient and elementary power" to reconsider any of its · orders. *Brielle Associates v. Graziano*, 685 F.2d 109, 111 (3rd Cir.1982) citing to *In*

*re Pottasch Bros. Co.*, 79 F.2d 613, 616–17 (2nd Cir.1935).

 Federal Rule of Civil Procedure 59, which requires that a motion to amend a judgment be served within ten days after entry of a judgment, does not apply to reconsideration of claims. *Karen-Richard Beauty Salon*, 36 B.R. at 897; Bankruptcy Rule 9023. Federal Rule of Civil Procedure 60(b)(6), made applicable to this proceeding by Bankruptcy Rule 9024, provides that a court may relieve a party from an order for any reason justifying relief from the operation of the judgment. Valuable court time has not previously been expended in determining the validity of the 1984 security agreements. If the Court were to now conclude that PCA's 1984 lien was invalid, PCA would not have been prejudiced by the earlier orders. Moreover, incumbent upon the Court is the responsibility to insure that state law is correctly applied to commercial transactions. Finally, resolution of this issue may well be a decisive factor as to whether the Debtors will succeed in their efforts to reorganize. The above reasons, and the fact that bankruptcy courts are endowed with "the power to sift the circumstances surrounding any claim to see that injustice and unfairness is not done in the administration of the bankruptcy estate", *Pepper v. Litton*, 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939), require that the Debtors at least be afforded the opportunity to have the merits of their position directly heard and considered. The Eighth Circuit has recently stated that "[b]ankruptcy courts do not read statutory words with a computer's ease, but operate under the overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction. *In re Briggs Transportation Company*, 780 F.2d 1339, 1342 (8th Cir. 1985). Thus, if the Court had concluded that the doctrines of res judicata or collateral estoppel were established, the aforementioned reasons and law would justify relief from operation

---

1. Section 502(j) in pertinent part, provides as follows: (j) a claim that has been allowed or disallowed may be reconsidered for cause. A

reconsidered claim may be allowed or disallowed according to the equities of the case.... 11 *U.S.C.* § 502(j).

of the judgment pursuant to Rule 60(b) and would constitute cause pursuant to section 502(j).

### 2.

■ Concluding that the issue of the validity of PCA's security agreements is properly before the Court, we now move to a discussion of the validity of PCA's security interest. Applicable state law will be considered in resolving this issue. *In re Spanish Trails Lanes, Inc.,* 16 B.R. 304, 306 (Bankr.D.Ariz.1981).

The Uniform Commercial Code (North Dakota Century Code Title 41) was adopted by the North Dakota Legislature in 1965. N.D.Cent.Code, Vol. 8b, p. 1 (1982) (preface to Title 41). Chapter 41–09 governs PCA's security agreements. N.D.Cent.Code § 41–09–02 (1983). Section 41–09–16(4)[2] unequivocally states that a transaction governed by Chapter 41–09 is also governed by various other chapters, *including 35–05 which pertains to crop mortgages, and in case of conflict Chapter 35–05 controls.* Section 35–05–04, on which the Debtors position is based, provides as follows:

A security agreement covering specific crops is not valid to create a security interest therein, nor entitled to be filed in the office of the register of deeds, if the security agreement contains any provision by which a security interest is claimed in any other personal property.

N.D.Cent.Code § 35–05–04 (1980).

The two PCA standard form security agreements executed between the Debtors and PCA on June 27, 1984, contain under section entitled "Description of Collateral", a listing of seven separately denoted categories of collateral, each preceded by a box to be checked if that section applies. The following categories were checked on both security agreements:

"2.5 All crops growing or to be grown by Debtor, and the products of all such crops, on real estate described as: [description of real estate was inserted in each security agreement]

2.6 All: harvested and processed crops not covered under other sections of this Agreement (whether or not produced by Debtor); feed; seed; fertilizer, insecticides, herbicides and other agricultural chemicals; and other supplies."

The Debtors contend that the security agreements are void pursuant to section 35–05–04. Exhaustive research reveals that neither the North Dakota Supreme Court nor any other Court has had the occasion to previously interpret and apply section 35–05–04. Nor do neighboring agricultural states have a similar statute. Accordingly, this Court will construe and apply this section in such manner as it believes the North Dakota Supreme Court would if given the opportunity. There appears to be little or no legislative history which explains the reasoning and policy considerations leading to the original enactment of section 35–05–04 in its earlier form. Nevertheless, when a statute is clear and unambiguous on its face, as is section 35–05–04, it is not within the province of this Court to second guess the moving spirit behind the legislature's enactment of the statute. Chapter 1–02 of the North Dakota Century Code contains Rules of Statutory Interpretation. Section 1–02–05 provides as follows:

When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

N.D.Cent.Code § 1–02–05 (1975).

PCA's security agreements cover specific crops in that they cover those grown on particular real estate. They also contain a provision by which a security interest is

---

**2.** Section 41–09–16(4) provides:

4. A transaction, although subject to this chapter, is also subject to chapters 10–18.1, 13–03, 35–05, 49–09, and 51–13, and in the case of conflict between the provisions of this chapter and any such statute, the provisions of such statute control. Failure to comply with any applicable statute has only the effect which is specified therein.

N.D.Cent.Code § 41–09–16(4) (1983).

claimed in other personal property. Therefore, the Court must conclude that PCA's security agreements are not in conformity with the clear language of section 35-05-04 and are not valid to create a security interest in the crops.

PCA alleges that section 35-05-04 has been impliedly repealed by a 1932 initiated measure and by section 35-05-01. This argument is meritless. Section 35-05-04 was amended and reenacted by Chapter 296, section 31, of the Session Laws of 1965, concurrent with the adoption of the Uniform Commercial Code, also enacted by Chapter 296. Chapter 35-05 was specifically referred to in section 41-09-16, as controlling in Article 9 transactions. Clearly, Article 9 transactions are subject to Chapter 35-05 and 35-05 controls. *Production Credit Ass'n of Minot v. Melland*, 278 N.W.2d 780, 787 (N.D.1979).

 PCA's belief that section 35-05-01, amended and reenacted subsequent to section 35-05-04, can not be reconciled with 35-05-04 and implicitly repeals section 35-05-04 is also without merit. Section 35-05-01 authorizes the granting of security agreements on crops to certain parties and institutions and does not, as PCA contends, grant it the unfettered power to obtain crop liens in violation of pertinent state law. PCA also argues that section 35-05-04 is preempted by 12 *U.S.C.* § 2096 and 12 *U.S.C.* § 2205 along with 12 *C.F.R.* § 614.4250. Congress has the authority to preempt state law. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Preemption may occur expressly or even impliedly when either congressional intent to entirely displace state regulation is evident or when state law actually conflicts with federal law. *Fidelity Federal Savings and Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 152-53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). A conflict with state law sufficient to preempt state law "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Section 35-05-04 does not conflict with federal law cited by PCA nor is it an obstacle preventing PCA from accomplishing the purposes and objectives of Congress. The federal statutes cited by PCA do not address the proper procedure for PCA to follow in executing and perfecting security agreements. State law is controlling in these areas unless federal law provides for a different procedure. *See In re Gelking*, 754 F.2d 778, 780 (8th Cir.1985) *cert. denied*, —— U.S. ——, 105 S.Ct. 3529, 87 L.Ed.2d 653 (1985). Moreover, PCA's implication that section 35-05-04, which in this instance would have required PCA to execute one or two additional security agreements, would prevent PCA from accomplishing the purposes and intentions of Congress is untenable.

Accordingly, the Debtors' Motion for use of cash collateral proceeds of the 1984 crop is GRANTED for the reason that PCA, the only party objecting to the Motion, does not have a valid lien thereon.

IT IS SO ORDERED.