In re Truman KINGSLEY and Connie
Kingsley, Debtors,

Truman KINGSLEY and Connie
Kingsley, Plaintiffs,

v.

FIRST AMERICAN BANK OF
CASSELTON, Defendant.

Bankruptcy No. 86–05944.
Adv. No. 86–7155.

United States Bankruptcy Court,
D. North Dakota.

April 29, 1987.

Daniel L. Wentz, Fargo, N.D., for plaintiffs.

John Irby, Casselton, N.D., Brad Sinclair, Fargo, N.D., co-counsel for First American Bank of Casselton.

William P. Westphal, Minneapolis, Minn., U.S. trustee.

Joseph Vogel, Mandan, N.D., for plaintiffs.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The debtors, Truman and Connie Kingsley (Debtors), by their third amended complaint filed February 18, 1987, seek to have invalidated or voided certain security interests claimed by the defendant, First American Bank of Casselton (Bank), in crops, government payments and feed. The Bank concedes that to the extent the Debtors have feed in addition to the crops grown by the Debtors as described on the security agreement, a security interest in the additional feed is not validly perfected and is thus avoidable. The issues before the court have been submitted by the parties for resolution on the pleadings, stipulated facts, and documents of record as stipulated to. The facts as material are as follows:

### Findings of Fact

The Debtors, on April 23, 1986, granted the Bank a security interest per a pre-printed security agreement entitled, "State of North Dakota, Security Agreement UCC–6."

This preprinted form security agreement is typical of those used by many lenders in North Dakota. The security agreement contains six general categories of described

collateral, each preceded by an open box to be checked if a security interest in that particular collateral is to be granted. The security agreement on which the Bank relies in asserting its security interest in crops and government payments provides, in pertinent part, as follows:

| XX | Crops: The following described crops which have been or may hereafter be harvested (describe crops) |

**All crops of every type and description grown and/or harvested.**

together with all other crops harvested from the date hereof on the premises described as follows:

**[The legal description of the Kingsleys' crop land is typed in at this point.]**

* * *

| XX | All Proceeds and Products of all the foregoing.[1] |

The security agreement was signed by both Debtors. A financing statement covering "all other crops harvested from the date hereof on the premises described as follows" with a description of property as listed on the security agreement inserted thereafter was signed by the Debtors and the Bank, and was filed with the Cass County Register of Deeds on April 28, 1986. The financing statement is a "STANDARD FORM–FORM UCC–1." Section 7 of the financing statement, which contains a description of real estate, contains in pre-printed language "☐ Proceeds —", with the box being checked. Section 10 of the financing statement contains in pre-printed language: "☐ Proceeds of collateral are also covered", with this box also checked. A "North Dakota Central Notice Form" was filed on April 28, 1986, with the Secretary of State for inclusion in the North Dakota Central Notice System.

On April 23, Truman Kingsley signed a U.S. Department of Agriculture, Agriculture Stabilization and Conservation Service (ASCS) standard "ASSIGNMENT of PAYMENT" form assigning $20,000.00 of the Debtors' 1986 deficiency and diversion payments to the Bank. This assignment form was filed with the Cass County ASCS Office, but a financing statement regarding this assignment has not been filed.

Pursuant to a stipulation between the parties dated January 18, 1987, the Debtors agreed to make available to the Bank 1986 soybeans on hand in the approximate amount of 6,000 bushels, 1986 corn on hand in the approximate amount of 10,000 bushels, $8,468.70 of proceeds from 1986 wheat sales, and an $18,782.27 check for 1986 barley grown by the Debtors. The proceeds from sale of the soybeans and corn, along with the wheat and barley sale proceeds were to be deposited in an interest bearing account at the Bank, pending resolution of the matter at bar. As of January 18, 1987, the parties stipulated that the Bank has a valid security interest in cattle valued at $86,000.00, and in equipment, machinery and vehicles valued at $118,000.00 as of October 31, 1986, with no depreciation occurring on the machinery through April, 1987.

*Conclusions of Law*

1.

Resolution of a portion of this complaint rests upon section 544(a) of the Bankruptcy Code. Section 544(a), commonly termed the "strong-arm clause", gives a trustee or a debtor in possession the rights and powers of a lien creditor at the time the case is commenced; the trustee or debtor in possession has a superior right to any unperfected security interest existing in the debtor's property. *In re Armstrong*, 56 B.R. 781, 785 (W.D.Tenn.1986); *In re Galvin*, 46 B.R. 12, 14 (Bankr.D.N.D.1986). Section 544(a) allows the trustee or debtor-in-possession to avoid an unperfected security interest.

■ The Debtors argue that, to the extent the Bank relies on its assignment of the 1986 government payments in asserting a security interest thereto, the security interest is avoidable because it is not properly perfected. Section 41–09–23 (U.C.C.

---

**1.** Bold print denotes typed in portion of security agreement, and standard print denotes preprinted language of security agreement.

§ 9–302) of the North Dakota Century Code, in pertinent part, provides as follows:

1. A financing statement must be filed to perfect all security interests except the following:

a. A security interest in collateral in possession of the secured party under section 41–09–26.

b. A security interest temporarily perfected in instruments or documents without delivery under section 41–09–25 or in proceeds for a ten-day period under section 41–09–27.

c. A security interest created by an assignment of a beneficial interest in a trust or a decedent's estate.

d. A purchase money security interest in consumer goods; but filing is required for a motor vehicle required to be registered and fixture filing is required for priority over a conflicting real estate interest in a fixture to the extent provided in section 41–09–34.

e. An assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor.

f. A security interest of a collecting bank (section 41–04–18) or in securities (section 41–08–36.1) or arising under the chapter on sales (see section 41–09–13) or covered in subsection 3.

g. An assignment for the benefit of all the creditors of the transferor, and subsequent transfers by the assignee thereunder.

\* \* \* \* \* \*

N.D.Cent.Code § 41–09–23 (Supp.1985). The ASCS forms for assignment of government payments are internal documents used by ASCS to "insulate the government as benefit provider from conflicting claims over payments, not to preempt state commercial law as between third parties". *In re Sunberg*, 729 F.2d 561, 563 (8th Cir. 1984). The assignment does not fall within one of the exceptions of section 41–09–23, thereby eliminating the need for a filed financing statement to perfect the assignment. Thus, the security interest, to the extent claimed via the assignment, is not perfected and is subject to avoidance pursuant to section 544 of the Code.

■ Although the security interest as claimed by virtue of the assignment is avoided, the Bank argues that the Debtors' grant of a security interest in the "Crops" and "Proceeds" also attaches to government farm payments. This court has previously held that a security interest in "crops ... and [the] products thereof" does not attach to government farm PIK payments. *In re Osteroos*, Adv. No. 83–7354 (Bankr. D.N.D. Aug. 8, 1984). On appeal, the district court reversed this court's decision and held that a security interest in "all crops ... and the products thereof" is sufficient to attach to government farm program payments. *Osteroos v. Norwest Bank*, 604 F.Supp. 848, 849 (D.N.D.1984). The district court appeared to treat a security interest in products as being synonymous with a security interest in proceeds, at least within the context of crops and government farm program payments. The district court's analysis also stated that PIK payments are analogous to government farm payments such as deficiency and disaster payments. *Id.* The district court's opinion in *Osteroos* is controlling on this court and resolves one of the issues before the court. Thus the Bank does hold a valid security interest in the Debtors' government payments to the extent they are derived in consequence of the 1986 crop.

2.

A far more novel issue is whether the security agreement on which the Bank relies in asserting a security interest in the 1986 crops and government payments violates section 35–05–04 of the North Dakota Century Code. Section 35–05–04 provides as follows:

**35–05–04. Security Agreement not to include other personal property.** A security agreement covering specific crops is not valid to create a security interest therein, nor entitled to be filed in the office of the register of deeds, if the security agreement contains any provi-

sion by which a security interest is claimed in any other personal property. N.D.Cent.Code § 35–05–04 (1980). Only two reported cases exist in which courts has discussed this statute: *In re Yagow*, 62 B.R. 73 (Bankr.D.N.D.1986) *aff'd* Civil No. A3–86–51 (D.N.D. Oct. 10, 1986) and *Production Credit Ass'n. v. Foss*, 391 N.W.2d 622 (N.D.1986). A security interest in " "[a]ll crops growing or to be grown" " on described real estate does constitute a security interest in specific crops in North Dakota, and if listed on a security agreement with other personal property is invalid as violative of section 35–05–04. *In re Yagow*, 62 B.R. at 80–81. However, neither of the above-mentioned cases have addressed the precise issue before the court: whether a security interest in crops *and* proceeds is invalid under section 35–05–04 because the inclusion of the term proceeds is inclusive of government farm program payments—a form of personal property.

Personal property is defined in North Dakota as "property other than real property consisting in general of things temporary or movable, including intangible property ...". *Bismarck Tribune Co. v. Omdahl*, 147 N.W.2d 903, 906 (N.D.1966). Accounts and general tangibles, such as government farm payments, are clearly personal property. *See* N.D.Cent.Code § 41–09–06 (U.C.C. § 9–106) (1983).[2]

Pursuant to section 41–09–27 (U.C.C. § 9–306) of the North Dakota Century Code, a security interest in certain collateral continues in proceeds of the collateral subject to limited exceptions. Proceeds include "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds". N.D.Cent.Code § 41–09–27(1) (U.C.C. § 9–306) (1983). The Seventh Circuit in the recent case of *In re Schmaling*, 783 F.2d 680 (7th Cir.1986),

held that a bank holding a security interest in "crops", who would be entitled to the proceeds of the crops as a matter of law, *see* U.C.C. § 9–203(3); U.C.C. § 9–306(2), was not entitled to government PIK payments. *Id.* at 680–84. Seeing little distinction between PIK payments and other government farm payments in existence since 1949, the court stated that the bank, by careful drafting, could have included government payments, general intangibles or contract rights in its security agreement to obtain a security interest in the government payments. *Id.* at 684. The *Schmaling* court found that "proceeds" as defined by U.C.C. § 9–306, did not extend to government farm programs. This court agrees with the holding of the *Schmaling* court's position that the term, proceeds, as defined in section 41–09–27 (U.C.C. § 9–306), to which a secured creditor is entitled as a matter of law, cannot be read to include government farm program payments. *See In re Schmaling*, 783 F.2d at 684. However, the district court in *Osteroos* interpreted the term "products" when included on a security agreement, in a much more expansive and encompassing fashion than one can read the proceeds definition contained in section 41–09–27 (U.C.C. § 9–306). This court is convinced that absent the "products" language on the security agreement in *Osteroos*, the district court would not have extended a security interest in crops to government payments solely on the basis of section 41–09–27 (U.C.C. § 9–306) alone.

The second step of this court's discussion leads one to the North Dakota Supreme Court case of *Production Credit Ass'n. v. Foss*, 391 N.W.2d 622 (N.D.1986). In *Foss*, PCA's security agreement covered all farm equipment, American Crystal Sugar Company stock and "All proceeds from sugarbeets". The supreme court held that section 35–05–04 did not apply because PCA's

---

2. Section 41–09–06 provides:

**41–09–06 (9–106). "Account" and "General intangibles" defined.** "Account" means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper whether or not it has been earned by performance. "General intangibles" means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money. All rights to payment earned or unearned under a charter or other contract involving the use or hire of a vessel and all rights incident to the charter or contract are accounts. N.D.Cent.Code § 41–09–06 (1983).

security interest attached to the *"Fosses'* right to receive sugarbeet contract payments from American Crystal and not in specific crops".

The validity of a security agreement is an issue to be determined based upon state law. *See In re Yagow,* 62 B.R. at 79; *In re Spanish Trails Lanes, Inc.,* 16 B.R. 304, 306 (Bankr.N.D.Ariz.1981). As the conclusive interpretor of North Dakota law, the North Dakota Supreme Court cases on the validity of security interests are binding on this court.

The North Dakota Supreme Court, concluding in *Foss* that " "[a]ll proceeds from sugarbeets" [gave PCA a security interest in] the *Fosses'* right to receive sugarbeet contract payments from American Crystal and not in specific crops", clearly distinguished between a security interest in specific crops and a security interest in proceeds, which the supreme court concluded covered contract payments. This decision is, in its theory, in accord with the *Osteroos* holding. Under *Foss,* an interest in "proceeds" from crops is *not* an interest in specific crops, *id.* at 626, but is an interest in any "right to receive sugarbeet contract payments".

■ A security agreement providing for a security interest in "Crops" and "Proceeds and Products" will, in North Dakota, attach to government farm program payments. *See Osteroos,* 604 F.Supp. at 849. However, a security interest in proceeds of a crop, *i.e.* contract rights, is not a security interest in specific crops within the meaning of section 35–05–04. *Id.* Ergo, a security interest in "Proceeds and Products" under North Dakota law extends beyond cash proceeds to other personal property. *See Bismarck Tribune Co. v. Omdahl,* 147 N.W.2d 903, 906 (N.D.1966); N.D.Cent. Code § 41–09–06 (U.C.C. § 9–106) (1983). The aforementioned decisions are controlling on this court and logically lead to only one conclusion—in North Dakota a security agreement listing a security interest in "Crops" on certain real estate and "Proceeds and Products" thereof, violates section 35–05–04 because the term "Proceeds and Products" are sufficient under which a

claim in other personal property can be made.

The Debtor asserts that should this court hold that the security agreement in question violates section 35–05–04, the security agreement is *in toto* invalid on its face. Section 35–05–04 provides that "[a] security agreement covering *specific crops* is *not valid to create a security interest therein* ... if the security agreement contains any provision by which a security interest is claimed in any other personal property." N.D.Cent.Code § 35–05–04 (1983) (emphasis added). This court does not read section 35–05–04 as invalidating the security agreement as a whole, but only invalidating it as to the "specific crops". Thus, while the Bank's security agreement is not effective as to the Debtors' 1986 crops and sale proceeds on deposit in consequence thereof, the security agreement is effective in allowing a security interest to attach to 1986 government farm program payments.

The Bank argues that a conclusion as this court has reached would eliminate all methods to obtain a valid crop lien in North Dakota, because a security interest continues in collateral proceeds as a matter of law pursuant to North Dakota Century Code section 41–09–27(3)(b). This argument is without merit. Section 35–05–04 prohibits a *security agreement* from containing a provision which by contract a security interest is claimed in other personal property, but does not prohibit continuation of a security interest in proceeds by operation of statute as permitted in section 41–09–27 (U.C.C. § 9–306). If creditors wish to preserve a security interest in crops and at the same time take a security interest in government farm payments, then section 35–05–04 requires a separate security agreement to be drafted to cover the government payments. If a creditor wishes only a security interest in crops and the cash proceeds incidental to their sale or disposition, then a security agreement reflecting a security interest in crops only is sufficient because section 41–09–27 will take over and extend the interest to cash proceeds. It is important to note that section 35–05–04 pertains only to security

agreements and does not prohibit "Crops" and "Proceeds and Products" from being included on a financing statement.

This court is aware of the consequences that this decision may have on security agreements presently in force in North Dakota. However, courts do not make laws—they interpret and apply them. One cannot logically reach a contrary result in this case without blindly ignoring the *Yagow, Osteroos* and *Foss* cases. This court's decision in *Yagow* was entered January 10, 1986, and the *Foss* decision was entered July 23, 1986, both months before the 1987 North Dakota Legislature convened. Yet, section 35–05–04 was not amended or repealed during the 1987 session. Moreover, this court has been unable to find evidence of any bill even attempting to make changes to section 35–05–04. It is not within this court's power to ignore debtor protections which the North Dakota Legislature has seen fit to provide. Section 35–05–04 has continuously been in effect since at least 1965, long before the Debtors and the Bank in this case entered into the security agreement.

This court, at the urging of creditors, has on numerous occasions readily held debtors to specific language of contracts and the statutory letter of the law, of which debtors are often times unaware, or fail to understand, when they enter into commercial transactions. Likewise, lending institutions, far more knowledgeable about commercial laws affecting their transactions, must be held to the letter of the law as well.

Accordingly, and for the reasons stated herein, IT IS ORDERED that First American Bank's security interest in feed is avoided.

IT IS FURTHER ORDERED that the security agreement dated April 23, 1986, by which the First American Bank of Casselton asserts its interest in the Debtors' 1986 crops and government farm program payments is invalid as to the 1986 crops and sale proceeds therefrom, but is perfected and enforceable as to government farm program payments in consequence of the 1986 crop. First American Bank of Cassel-

ton is ordered to immediately turn over to the Debtors, Truman and Connie Kingsley, all 1986 crops, and monies held on deposit in consequence thereof.

LET JUDGMENT BE ENTERED ACCORDINGLY.