**In Re Truman R. KINGSLEY & Connie Kingsley, Debtors.**

**Truman R. KINGSLEY & Connie Kingsley, Appellee,**

**v.**

**FIRST AMERICAN BANK OF CASSELTON, Appellant.**

**Civ. No. A3-87-96.
Bankruptcy No. 86-05944.**

United States District Court,
D. North Dakota,
Southeastern Division.

Aug. 27, 1987.

Joseph A. Vogel, Mandan N.D., Daniel L. Wentz, Fargo N.D., for appellee.

Paul B. Jones and Hart Kuller, St. Paul, Minn., John Irby, Casselton, N.D., Keith C. Magnusson, North Dakota Bankers Ass'n, Bismarck, N.D., for appellant.

MEMORANDUM AND ORDER

CONMY, Chief Judge.

The Appellant appeals to this court from an order of the Bankruptcy Court, wherein its claimed security interest in the Debtors' 1986 crops and cash proceeds therefrom was invalidated, 73 B.R. 767. the North Dakota Bankers Association, pursuant to an order for leave to participate as *amicus curiae*, has also submitted a brief on the issues.

The facts are based on stipulated facts submitted to the Bankruptcy Court and are not disputed by the parties. The Debtors on April 23, 1986, executed a security agreement with the Bank. The security agreement, a preprinted form supplied by the Bank, granted the Bank a security interest in the Debtors' "crops" (including a

legal description of the real property where the crops were to be grown) and "all proceeds and products of all the foregoing". A financing statement covering "all other crops harvested from the date hereof on the premises described as follows", (with a description of property as listed on the security agreement inserted) "proceeds", and "proceeds of collateral" was filed with the Cass County Register of Deeds on April 28, 1986.

On April 23, Truman Kingsley signed a U.S. Department of Agriculture, Agriculture Stabilization and Conservation Service (ASCS) standard "ASSIGNMENT of PAYMENT" form assigning $20,000.00 of the Debtors' 1986 deficiency and diversion payments to the Bank. The assignment form was filed with the Cass County ASCS Office, but a financing statement regarding this assignment was not filed.

The Bankruptcy Court, relying in part on this court's decision in *Osteroos v. Norwest Bank of Minot*, 604 F.Supp. 848 (1984), concluded that, although the claimed security interest in the government payment was not perfected, the Bank still held a valid security interest in the government payments. This determination is not on appeal to this court. The Bankruptcy Court then held that the government payments were not similar to cash proceeds from the 1986 crops but constituted other personal property. As a result the Bankruptcy Court ruled that the Bank's security interest in the government payments violated section 35–05–04 of the North Dakota Century Code. Thus the Bankruptcy Court ordered that the Bank's asserted security interest in the Debtors' 1986 crops and sale proceeds therefrom was invalid, but valid and enforceable as to the government farm program payments in consequence of the 1986 crops.[1]

## LAW

The issue on appeal before this court is whether the government payments constituted "other personal property" within the meaning of section 35–05–04 of the North Dakota Century Code. Section 35–05–04 provides:

> A security agreement covering specific crops is not valid to create a security interest therein, nor entitled to be filed in the office of the register of deeds, if the security agreement contains any provision by which a security interest is claimed in any other personal property.

N.D.Cent.Code § 35–05–04 (1980). The Appellant, and amicus curiae, assert that the government payments are merely another form of proceeds from the 1986 crops and not in violation of the North Dakota Century Code. It is the position of the Appellants that since a secured party's interest in the collateral also entitles them, as a matter of law, to a secured interest in the proceeds, the government payment, being a proceed, cannot be considered "other personal property" under section 35–05–04. This court agrees. Although the Bankruptcy Court attempted to balance the competing interests (the secured and unsecured creditors in such situations), the law cannot be read to support the conclusion reached by the Bankruptcy Court.

In *Osteroos* this court held that a security interest covering "all crops and products thereof" and the language of the financing statement covering "the proceeds and products of such crops" was sufficient to give the Bank, in that case, a security interest in farm PIK payments. *Osteroos*, 604 F.Supp. at 849. The Bankruptcy Court interpreted *Osteroos* as providing for a security interest in farm payments only where the security agreement included the language "products". In the Bankruptcy

---

1. The Bankruptcy Court concluded that if the security interest violated North Dakota Century Code section 35–05–04 the security agreement was not totally invalid. Rather, the Bankruptcy Court held that only that portion of the security agreement that relates to specific crops and the proceeds therefrom was invalid. A literal application of section 35–05–04, however, requires a different result. According to the statute any security agreement that attempts to claim a se-

curity interest in specific crops and which also tries to claim an interest in other personal property is invalid in toto. *See* N.D.C.C. § 35–05–04 (1980). The statute provides the security interest is not valid and as a result not entitled to be filed. *Id.* Consequently, any security interest that would be claimed under the same financing statement is not entitled to be filed and therefore invalid from its inception.

Court's order the court stated "this court is convinced that absent the 'products' language of the security agreement in *Osteroos*, the district court would not have extended a security interest in crops to government payments solely on the basis of section 41–09–27 (U.C.C. § 9–306) alone." *Osteroos*, however, cannot be construed so narrowly.

Under section 41–09–27 (U.C.C. § 9–306) of the North Dakota Century Code, proceeds include whatever is received upon the sale, exchange, collection, or other disposition of the collateral. *See* N.D.C.C. § 41–09–27 (1983). The government payments in the instant case are a form of proceeds under section 41–09–27. In fact in *Osteroos*, the court relied on cases that have concluded that farm payments are proceeds of the originally secured crops. *See Osteroos*, 604 F.Supp. at 849, *citing In Re Judkins*, 41 B.R. 369 (Bankr.M.D.Tenn. 1984) (PIK payments constitute "crop proceeds"); *In Re Munger*, 495 F.2d 511 (9th Cir.1974).

The court in *Osteroos* reasoned that had the debtors grown corn during the 1983 growing season, it would have been covered by the security agreement. *Id.* The court stated:

> The PIK payments, though different if form, are analogous to cash payments received under *federal deficiency* and disaster programs; such cash payments have been determined to be covered by a security agreement covering "crop proceeds". [emphasis added].

*Id. citing In Re Munger*, 495 F.2d 511 (9th Cir.1974). In *In Re Munger*, the Court of Appeals for the Ninth Circuit concluded that subsidy payments were "proceeds". *In Re Munger*, 495 F.2d at 513. The subsidy payments in question in *In Re Munger*, were payments which were closely connected with the sale of the sugar beets, being computed on the basis of the amount of sugar in the sugar beets grown on the farm and marketed, and paid to the farmer by the Department of Agriculture in addition to any payment from the purchaser. *Id.* Hence, these subsidy payments received in *In Re Munger* are similar to the deficiency payments received in the present case. Based on a careful evaluation of the *Osteroos* decision, it can only be read to stand for the rule that farm payments are a form of proceeds of the original crops and such language as "products" or "proceeds" is sufficient to create the interest in the farm payments.

Section 41–09–27(1), along with section 35–05–04 were enacted and amended respectively as part of North Dakota's overall commercial transaction law, specifically secured transactions. Thus section 35–05–04 must be interpreted and applied in a manner as consistently as possible with the overall secured transaction scheme in North Dakota as designed in Chapter 41–09. Where section 35–05–04 obviously conflict with Chapter 41–09, the later controls. *See* N.D.C.C. § 41–09–16(4) (1987). Where possible, however, these sections must be applied in a consistent manner.

Since Chapter 41–09 provides that a secured party's interest follows the proceeds on the exchange of the collateral, a Bank's secured interest in the crops must also follow the proceeds. These proceeds include the farm payments that a debtor may be entitled to in consequence of the crops secured by the Bank. Section 41–09–27 cannot be interpreted as allowing a secured party to have a secured interest in the proceeds of the collateral in all cases except crop mortgages. Therefore, under section 35–05–04 "other personal property" can only be interpreted as meaning personal property other than any proceeds that the secured party may be entitled to as a matter of law under section 41–09–27. The fact that The Bank may have inserted language within the security agreement placing the Debtor on notice that the Bank also has a secured interest in the proceeds, does not defeat his secured interest in those proceeds.

Accordingly, the order of the Bankruptcy Court is REVERSED. It is the ORDER of this court that the Bank's security interest in the Debtors' 1986 crops is valid and enforceable as to the specific crop, cash proceeds therefrom, and the government farm payments in consequence of the 1986 crops.